UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ADONIS GLADNEY,<br><br>      Defendant. | NO.  CR-08-686-RHW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY MINUTES; CONTINUING TRIAL** |

A pretrial conference was held on January 9, 2009, in Los Angeles, California.  Defendant was present and represented by Frank Sanes, Jr.  The Government was represented by Wendy Wu.  Before the Court was Defendant's Motion to Suppress Evidence and for Return of Property (Ct. Rec. 27) and Motion for Inspection of Grand Jury Minutes (Ct. Rec. 28).

At the hearing, Defendant did not present any direct testimony.  Defendant did not take the stand.  Rather, Defendant relied on the affidavits and declarations that were submitted with his briefing.  Likewise, the Government did not present any direct testimony.

### BACKGROUND FACTS

On April 18, 2006, based on FBI Special Agent Todd Munoz's Affidavit, the Honorable Ralph F. Zarefsky, United States Magistrate Judge, issued a search warrant for AG Solutions' premises in Los Angeles, California, which is also

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY MINUTES; CONTINUING TRIAL ~ 1**

1  Defendant's residence.

2       The Affidavit was forty-five pages and it contained a detailed explanation of

3  the licensing practices of Microsoft and provided specific examples of conduct that

4  Agent Munoz alleged were criminal activity on the part of Defendant and his

5  company, AG Solutions.  Specifically, the Affidavit cited:

6       1.    The Kevin Barnes investigation.  The Denver FBI office executed a

7             search warrant on Kevin Barnes, who was suspected of selling

8             unlicensed software.  The seized software was tested and found to be

9             counterfeit.  Kevin Barnes purchased software for purposes of resale

10            from AG Solutions beginning in 2003.

11      2.    The Justin Harrison investigation.  The Atlanta FBI office was

12            investigating Justin Harrison, whom they suspected was selling stand

13            alone Microsoft Certificate of Authenticity (COA).  Agents executed a

14            search warrant and 600 COA labels were found.  Agents obtained chat

15            logs between Harrison and Defendant, which the Affiant interpreted to

16            indicate that Defendant was engaged in criminal activity.  It was

17            revealed in one of these online conversations that Defendant owned a

18            replica silver Lamborghini Diablo.  Defendant and Harrison also

19            talked about removing the paint/labeling from the software.

20      3.    CS-2 contacted Defendant to discuss the procurement and distribution

21            of unauthorized Microsoft product activation key codes and Microsoft

22            NFR (Not For Retail) software products.

23      4.    UC Agent placed an online order on the web site operated by AG

24            Solutions and Defendant for Microsoft Windows XP Professional

25            Original Equipment Manufacturer (OEM), which is software

26            specifically licensed to computer hardware manufacturers, such as

27            Dell Corporation, for distribution with the sale of new computer

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN**
**OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY**
**MINUTES; CONTINUING TRIAL ~ 2**

hardware.  This type of software is not licensed for sale without a new computer as a stand alone or unbundled software product.

5.   UC placed online order with "www.abovegroundsolutions.com" (Defendant's new company) for one piece of Microsoft SQL Server 2000 Standard Edition Full Retail software with 25 CAL licenses. The software that was shipped was a "Not For Resale" product and had a non-Microsoft label attached that stated the product "includes 25 CD integrated SQL 2000" Licenses, notwithstanding the fact that the website described the product as a "Full Retail Version" and the image presented was a full retail box package.  There were no COA with the software.

6.   Microsoft does not distribute SQL Server 2000 products with integrated Client Access Licenses.  Instead, a genuine Microsoft produce sold with a CAL would have a separate paper document license produced by Microsoft.

7.   FBI undertook Operation Digital Marauder that targeted members of an extensive criminal enterprise involved in the manufacture and distribution of counterfeit computer software products.  The investigation yielded $87 million in counterfeit software and access to CS-1, who was the primary target of the investigation.  CS-1 confirmed that AG Solutions was one of the CS-1 customers and verified that AG Solutions purchased counterfeit software products. CS-1 is well-known in the counterfeit community and has many contacts.

On April 19, 2006, at approximately 6:00 a.m., FBI agents executed the search warrant.  The agents knocked on the front door and announced that FBI agents were seeking entry into the premises pursuant to a search warrant.  Three to

**ORDER GRANTING, IN PART, AND DENYING, IN PART, DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY MINUTES; CONTINUING TRIAL ~ 3**

1  four such "knock and announces" were conducted.  The agents sought to open the
2  door with a key obtained from the security guard of the apartment building.  The
3  key failed to open the door.  After one to one and a half minutes passed after the
4  first knock and announce, the agents breached the door and gained entry into the
5  apartment with their guns drawn.

6      The agents were dressed in jackets, bullet proof vests, and caps that clearly
7  identified them as FBI agents or police.   Defendant estimates there were about a
8  dozen individuals, including Microsoft officials.

9      As the agents entered the apartment, they encountered Defendant walking
10 down the hallway towards the front door.  They told him they were executing a
11 search warrant.  The agents handcuffed Defendant and searched his waistband.
12 Defendant was then taken outside while the agents conducted a protective sweep of
13 the apartment.  While Defendant was waiting outside, the agents told him that they
14 were not arresting him that day.  After the protective sweep was complete,
15 Defendant was led back into the apartment, where the agents removed the
16 handcuffs.  They told Defendant he was not under arrest and that he could leave at
17 any time.  Agents told Defendant that they would like to speak with him, but that
18 he was not required to speak with them.

19     Defendant indicates that after he was returned to the apartment, there were at
20 least two FBI agents who were guarding him at all times.  He was taken to a back
21 room in his apartment.

22     During the questioning, Defendant admitted that he had two replica
23 Lamborghinis, his business was the sole source of his income, and he had grossed
24 about $3,000,000 over the last two and a half years.  An agent demanded that
25 Defendant provide him with the keys to the safe, to which Defendant complied.  In
26 the safe, the agent located personal papers and $74,000 in cash.  Defendant also
27 provided details regarding the transactions with the United States Marine Corp.

28 **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 4**

1    On May 12, 2008, Agent Munoz, along with four or five other FBI agents,

2    arrested Defendant pursuant to an arrest warrant. The agents against breached the

3    door to gain entry to Defendant's residence.

4    **1.     Defendant's Motion to Suppress Evidence and for Return of Property**

5    Defendant is seeking both the suppression of the evidence seized during the

6    execution of a federal search warrant and the return of the property that was seized.

7

8    Defendant argues that the evidence seized during the execution of a search

9    warrant should be suppressed for the following reasons: (1) the warrant was issued

10   without probable cause; (2) the officers violated 18 U.S.C. § 3109 when they

11   entered his residence by smashing down the door and entering at gun point; (3)

12   Defendant was questioned without being advised of his constitutional rights; (4)

13   Defendant was forced to provide keys to a locked safe, from which the officers

14   opened up and seized money; (5) the FBI officers broke open the lock to the garage

15   containing two replica automobiles and seized two vehicles; and (6) the search and

16   seizure of his property was the product of a conspiracy between the Government

17   and Microsoft, in violation of 42 U.S.C. § 1985.

18   **A.     Probable Cause**

19   As a general rule, searches and seizures violate the Fourth Amendment

20   unless they are based on probable cause and executed pursuant to a valid search

21   warrant. *United States v. Delgado*, 545 F.3d 1195, 1201 (9th Cir. 2008).  Probable

22   cause exists when, under totality of the circumstances, there is fair probability that

23   contraband or evidence of crime will be found in particular place. *United States v.*

24   *Davis*, 530 F.3d 1069, 1084 (9th Cir. 2008).  "When a court is considering whether

25   an informant's tip is sufficient to support a finding of probable cause or reasonable

26   suspicion, the court must employ a 'totality-of-the-circumstances approach' that

27   takes into consideration the informant's 'veracity' or 'reliability' and his 'basis of

28   **ORDER GRANTING, IN PART, AND DENYING, IN PART,
     DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
     OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
     MINUTES; CONTINUING TRIAL ~ 5**

1  knowledge.'"  *United States v. Rowland*, 464 F.3d 899, 907 (9th Cir. 2006) (*citing*

2  *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

3  The Court finds there was probable cause to issue the warrant.  The

4  informants are reliable and the information they provided was based on their

5  personal knowledge.  The warrant provided sufficient evidence for the issuing

6  court to conclude that AG Solutions was procuring and distributing counterfeit

7  software and that the software would be located at the residence/business.

**B.    18 U.S.C. § 3109 and Knock and Announce Rule**

9  Defendant argues that the officers violated 18 U.S.C. § 3109 and the knock

10  and announce rule when they executed the search warrant.

11  18 U.S.C. § 3109 provides:

12  The officer may break open any outer or inner door or window
13  of a house, or any part of a house, or anything therein, to execute a
    search warrant, if, after notice of his authority and purpose, he is
    refused admittance or when necessary to liberate himself or a person
14  aiding him in the execution of the warrant.

15  Additionally, the common law knock-and-announce principle forms part of

16  the Fourth Amendment reasonableness inquiry.  *Wilson v. Arkansas*, 514 U.S. 927

17  (1995).  In *Wilson*, the Supreme Court held that "although a search or seizure of a

18  dwelling might be constitutionally defective if police officers enter without prior

19  announcement, law enforcement interests may also establish the reasonableness of

20  an unannounced entry."  *Id.* at 936.

21  In *United States v. Combs*, the Ninth Circuit rejected the argument that

22  without a literal knock, the entry into a home is *per se* unreasonable under the

23  Fourth Amendment.  394 F.3d 739, 743 (9th Cir. 2005).  It also rejected the

24  argument that a knock is never necessary under the Fourth Amendment.  *Id.*

25  Instead, it held that, "'[t]he focus of the 'knock and announce' rule is properly not

26  on what 'magic words' are spoken by the police, or whether the police rang the

27  doorbell, but rather on how these words and other actions of the police will be

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 6**

1   perceived by the occupant.'" *Id.* (*quoting United States v. Spikes*, 158 F.3d 913,

2   925 (6th Cir. 1998).  The *Combs* noted, however, that

> "[t]he general practice of physically knocking on the door, announcing law enforcement's presence and purpose, and receiving an actual refusal or waiting a sufficient amount of time to infer refusal is the preferred method of entry.  This method is preferable because it provides a clear rule that law enforcement can follow. It also promotes the goals of the knock and announce principle: protecting the sanctity of the home, preventing the unnecessary destruction of private property through forced entry, and avoiding violent confrontations that may occur if occupants of the home mistake law enforcement for intruders."

8   *Id.*

9   On the other hand, the Circuit recognized that, based on the totality of the

10  circumstances of a particular case, "knock and announce" is not invariably required

11  by the Fourth Amendment.  *Id.*

12  There are conflicting versions of the events as they unfolded during the

13  execution of the search warrant.  It is undisputed that the execution took place at

14  6:00 a.m.  Defendant states that there was no knock and announce.  The officers

15  report that there was a knock and announce and at least a one to one and one-half

16  minute delay before they breached the door.  The officers also indicate they

17  attempted to open the door with a key they had obtained from the security

18  personnel.

19  The Court does not have to resolve the conflict of whether the officers

20  breached the knock and announce rule, because even if there was a knock and

21  announce violation, it does not merit suppression of the evidence.  *United States v.*

22  *Ankeny*, 503 F.3d 829, 835 (9th Cir. 2007) (holding that suppression is not

23  warranted because the purposes of the knock and announce rule—to protect bodily

24  safety, property, and privacy—are not vindicated by excluding evidence obtained

25  after the rule has been violated).  Even so, the Court credits the testimony of the

26  officers that they knocked and announced three to four times before trying to open

27  the door with a key provided by the building's manager.  Defendant may have not

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
    **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN**
    **OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY**
    **MINUTES; CONTINUING TRIAL ~ 7**

1  heard the knock and announce, since he had been sleeping.  This does not mean,

2  however, that the officers did not knock and announce before they broke down the

3  door to gain entry into Defendant's apartment.  Because there was no response to

4  the knock and announce, and because the key did not open the door, the officers

5  were permitted to break the door to gain entry pursuant to § 3109.

6         Moreover, the Court finds that the execution of the search warrant was

7  reasonable.  To assess the reasonableness of the execution of a search made

8  pursuant to a warrant, courts must consider factors that bear on protecting the

9  privacy due to the public, the needs of law enforcement, the reasonable

10 expectations of an informed public, and any other matters appropriately considered

11 as part of the totality of the circumstances.  *United States v. Martinez-Garcia*, 397

12 F.3d 1205, 1211 (9th Cir. 2005).  In determining the reasonableness of the entry,

13 the Court must look to the totality of the circumstances.  *Combs*, 394 F.3d at 744.

14 Factors the Court considers are: officer safety, time of day, destructibility of

15 evidence, *i.e.* the size of the residence, the nature of the offense, and any other

16 observations by law enforcement that would support a forced entry; notice give by

17 officers, and the likelihood that the notice alerted those inside the home to the

18 officer's presence and purpose.  *Id.*   The presence or absence of any one of these

19 factors is not dispositive.  *Id.*

20        It was reasonable for the officers to breach the door with their guns drawn,

21 given that Defendant failed to answer the door.  There is no testimony in the record

22 that the agents ramsacked the apartment, or left it inhabitable.  Defendant was left

23 outside until the protective sweep was complete, and then he was permitted to

24 reenter his apartment.  Moreover, Defendant has not identified specific conduct

25 that supports his contention that the execution of the search warrant was

26 unreasonable.

27              C.    *Miranda* Violation

28 **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 8**

1    Defendant argues that he was questioned without being advised of his

2    constitutional rights.  The Government does not maintain that Defendant was

3    advised of his *Miranda* rights.  Rather, the Government argues that any statements

4    made by Defendant were voluntary and Defendant consented to being interviewed

5    without an attorny present.

6    Recently, the Ninth Circuit addressed whether *Miranda* warnings were

7    required during an in-home interrogation, where the officers told the defendant that

8    he was not under arrest, that any statement he might made would be voluntary, that

9    he would not be arrested that day regardless of what information he provided, and

10   that he was free to leave.  *See United States v. Craighead*, 539 F.3d 1073, 1078 (9th

11   Cir. 2008).  In that case, the Circuit recognized the uniqueness of an interrogation

12   conducted within the suspect's home.  *Id.* at 1082.  Specifically, the Circuit

13   observed:

14   > If a reasonable person is interrogated inside his own home and is told
   > he is 'free to leave,' where will he go?  The library?  The police
15   > station?  He is already in the most constitutionally protected place on
   > earth.  To be 'free' to leave is a hollow right if the one place the
16   > suspect cannot go is his own home.  Similarly, a reasonable person
   > interrogated inside his own home may have a different understanding
17   > of whether he is truly free 'to terminate the interrogation' if his home
   > is crawling with law enforcement agents conducting a warrant-
18   > approved search.  He may not feel that he can successfully terminate
   > the interrogation if he knows that he cannot empty his home of his
19   > interrogators until they have completed their search.

20   *Id.* at 1083 (citations omitted).

     The Ninth Circuit approached the analysis by asking "the extent to which the
21
     circumstances of the interrogation turned the otherwise comfortable and familiar
22
     surroundings of the home into a 'police-dominated atmosphere.'" *Id.*
23
     The Circuit noted that the determination of whether an in-home interrogation was
24
     custodial "is necessarily fact intensive."  *Id.* (*quoting United States v. Griffin*, 7
25
     F.3d 1512, 1518 (10th Cir. 1993)).  The Circuit looked at several factors in
26
     determining whether the circumstances of the interrogation effected a police-
27

28   **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
     **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN**
     **OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY**
     **MINUTES; CONTINUING TRIAL ~ 9**

1  dominated atmosphere: (1) the number of law enforcement personnel and whether

2  they were armed; (2) whether the suspect was at any point restrained, either by

3  physical force or by threats; (3) whether the suspect was isolated from others; and

4  (4) whether the suspect was informed that he was free to leave or terminate the

5  interview, and the context in which any such statements were made.  *Id.*

6      In that case, the Circuit concluded that when considering the totality of the

7  circumstances, the interrogation of the defendant within the confines of his home

8  was custodial and *Miranda* warnings were required.  *Id.* at 1089.  There, eight law

9  enforcement officers, representing three different law enforcement agencies

10 entered the defendant's home.  *Id.*  The defendant was not arrested, but was

11 escorted to a storage room and was questioned by being observed by an armed

12 guard at the door.  *Id.*

13     Each of the *Craighead* factors will be analyzed below.

14                        **1.      Number of law enforcement personnel**

15     In considering at the number of law enforcement personnel who executed

16 the search warrant in *Craighead*, the Ninth Circuit made the following

17 observations:

18         When a large number of law enforcement personnel enter a
   suspect's home, they may fill the home such that there are no
19     police-free rooms or spaces to which the suspect may retreat should he
   wish to terminate the interrogation. Similarly, when the number of law
20     enforcement personnel far outnumper the suspect, the suspect may
   reasonably believe that, should he attempt to leave, he will be stopped
21     by one of the many officers he will encounter on the way out. The
   suspect may also believe that the large number of officers was brought
22     for the purpose of preventing his departure. In addition, if the suspect
   sees the officers unholstering their weapons within his home, the
23     suspect may reasonably believe that his home is no longer safe from
   the threat of police force. In short, the presence of a large number of
24     visibly armed law enforcement officers goes a long way towards
   making the suspect's home a police-dominated atmosphere.
25 *Id.* at 1084-85.

26     Here, Defendant stated that there were at least a dozen armed law

27 enforcement personnel who entered his apartment.  There is no dispute that the

28 **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN**
**OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY**
**MINUTES; CONTINUING TRIAL ~ 10**

1  officers had their guns drawn when they gained entry into the apartment.
2  Defendant stated that he was terrified that he would be either killed or hurt by the
3  agents.  A reasonable person in Defendant's position would feel that his home was
4  dominated by law enforcement agents and that they had come prepared for a
5  confrontation.  *See Craighead*, 539 F.3d at 1085.

### 2.      Whether Defendant was restrained

7        The second factor the Court must consider is whether Defendant was at any
8  point restrained, either by physical force or by threats.  "When law enforcement
9  agents restrain the ability of the suspect to move–particularly through physical
10  restraints, but also through threats or intimidation–a suspect may reasonably feel he
11  is subject to police domination within his own home and thus not free to leave or
12  terminate the interrogation."  *Id.*  "Restraint amounting to custody may also be
13  inferred where law enforcement officers permit the suspect to move around the
14  house for brief periods but insist on escorting and monitoring him at all times."  *Id.*
15  (Citations omitted)

16        Here, Defendant was handcuffed.  He was then escorted to a back room in
17  his apartment.  Defendant indicates that at least two FBI agents were guarding him
18  at all times during the questioning.  It is objectively reasonable for Defendant to
19  believe he was under guard.  These facts weigh in favor of finding that Defendant's
20  freedom of action was restrained in a way that increased the likelihood that
21  Defendant would succumb to police pressure to incriminate himself.  *See id.* at
22  1086,

### 3.      Whether Defendant was isolated from others

24        The third fact the Court must consider is whether Defendant was isolated
25  from others.  In *Craighead,* tshe Circuit noted that isolation from the outside world
26  is a crucial factor that would tend to lead a suspect to feel compelled to provide
27  self-incriminating statements.  *Id.* at 1087.

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN**
**OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY**
**MINUTES; CONTINUING TRIAL** ~ 11

1  Here, it appears that Defendant lived alone.  Thus, although Defendant was

2  taken to a back room, it does not appear that this was done in order to isolate him

3  from other who might lend him moral support during the questioning.

4      **4.    Whether Defendant was informed that questioning**

5             **was voluntary and he was free to leave or terminate**

6             **the interview**

7  Defendant was told that he was not going to be arrested and he was free to

8  leave.  As the Ninth Circuit pointed out, however, this only begs the question as to

9  where was he suppose to go.  It was clear that the apartment was teeming with law

10  enforcement personnel as well as non-law enforcement personnel.

11  "The mere recitation of the statement that the suspect is free to leave or

12  terminate the interview [] does not render an interrogation non-custodial *per se*."

13  *Id.*  Rather, the Court must consider the delivery of these statements within the

14  context of the scene as a whole.  *Id.*

15  Here, Defendant was being interviewed in a back room.  It is not clear

16  whether this room was used by Defendant as a storage area, an office, or as a

17  bedroom.  In *Craighead*, the Circuit noted that if an interview is conducted in a

18  suspect's kitchen, living room, or bedroom, it might allow the suspect to take

19  comfort in the familiar surroundings of the home and decrease the sensation of

20  being isolated in a police-dominated atmosphere.  *Id.*

21  Given that Defendant was taken to the back room, was under constant

22  guards, and was not interviewed in the living room, or kitchen, the Court finds that

23  a reasonable person in Defendant's position would not have actually 'felt' he was

24  free to leave.

25      **5.    Conclusion**

26  The Court finds that in considering the totality of the circumstances,

27  notwithstanding the fact that Defendant was told that he was free to leave,

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 12**

1 Defendant's home became a police-dominated atmosphere and it was reasonable

2 for Defendant to believe that there was no where for him to go.  Because the

3 interrogation at Defendant's apartment was custodial, *Miranda* warnings were

4 required.  Because the warnings were not given, any statements made by

5 Defendant must be suppressed.

6    **D.    Possible *Franks* violation**

7    In his motion, Defendant states that "it appears that the warrant itself was

8 procured through false, deceptive and fraudulent declarations."

9    A defendant is entitled to an evidentiary hearing if he "makes a substantial

10 preliminary showing that a false statement knowingly and intentionally, or with

11 reckless disregard for the truth, was included by the affiant in the warrant affidavit,

12 and if the allegedly false statement is necessary to the finding of probable cause."

13 *Craighead,* 539 F.3d at 1080 (*quoting Franks v. Delaware*, 438 U.S. 154, 155-56

14 (1978)).  To justify a hearing, a defendant must make specific allegations, allege a

15 deliberate falsehood or reckless disregard for the truth, and accompany such a

16 claim with a detailed offer of proof.  *Id.*

17    To the extent Defendant is attempting to argue that he is entitled to a *Franks*

18 hearing, Defendant has failed to properly allege that any specific portion of the

19 warrant was actually false and misleading.  As such, he has not met his burden and

20 the Court rejects Defendant's arguments that the warrant was procured through

21 false statements.

22    Additionally, Defendant argues that a warrant cannot be based on hearsay.

23 Defendant asserts that probable cause cannot be established by affidavits which are

24 purely conclusory, and which only state an affiant or informer's belief that

25 probable cause exists, without detailing the underlying circumstance upon which

26 the belief is based.

27    Contrary to Defendant's position, search warrant affidavits can be based on

28 **ORDER GRANTING, IN PART, AND DENYING, IN PART,**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN**
**OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY**
**MINUTES; CONTINUING TRIAL ~ 13**

1  hearsay.  *See United States v. Bridges*, 344 F.3d 1010, 1015 (9th Cir. 2003).  "An
2  affidavit may be based on hearsay information and need not reflect the direct
3  personal observations of the affiant, so long as the magistrate is informed of some
4  of the underlying circumstances supporting the affiant's conclusions."  *United*
5  *States v. Ventresca*, 380 U.S. 102, 108 (1965).

6  **E.    Return of the Property**

7  Defendant's remaining arguments relate to his request that the Court order
8  the Government to return the property that was seized during the execution of the
9  search warrant.  Defendant is seeking the return of his business inventory of
10  merchandise, $74,000 in cash, and his two replica automobiles.

11  The Government has instituted civil forfeiture proceedings with respect to
12  the cash and the automobiles.  The Court declines to exercise its equitable powers
13  to hear Defendant's Fed. R. Cr. P. 41(g) motion because he has an adequate
14  remedy at law regarding the forfeiture of these assets.  *See United States v. Elias*,
15  921 F.2d 870, 873 (9th Cir. 1990).

16  Additionally, the software products seized represented about 45-50% of the
17  computer software products found at the AG Solution's premises.  The Court finds
18  that the Government continues to need this property for evidence.  *See United*
19  *States v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085, 1113 (9th Cir. 2008)
20  (holding that an order to return property under Rule 41(g) is inappropriate where
21  "the government's need for the property as evidence continues" and a return of the
22  property should follow only a particularly egregious violation).  "If the United
23  States has a need for the property in an investigation or prosecution, its retention of
24  the property generally is reasonable."  *Id.*  Here, the Government's seizure of the
25  software was neither unreasonable nor exceeded the four corners of the warrants.
26  *See id.*   The Court declines to order the return of the seized property.

27  **2.    Defendant's Motion for Inspection of Grand Jury Minutes**

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 14**

1    Defendant seeks to inspect the minutes of the Grand Jury of the United
2    States for the Central District of California for all sessions during which it
3    considered matters leading to the filing of the Indictment in the above-captioned
4    case.[1]  Defendant argues that the Grand Jury would not have returned the
5    Indictment if it had been made aware of certain information, such as the fact that:
6    all of the Microsoft products had been purchased from Microsoft; these products
7    allowed for unlimited installations; the Product Activation Keys came from
8    Microsoft, and that he supplied an older version of a product to the Marines, which
9    solved a problem it had been having with its accounting system.  Defendant also
10   argues that had the Grand Jury been made aware that the two-year delay in
11   securing the indictment was due to intentional misconduct of the Government and
12   the manner in which the search warrant was executed, it would not have returned
13   the indictment.

14   Fed. R. Cr. P 6(E) provides that disclosure of grand jury information in
15   limited circumstances.  Specifically, Rule 6 provides:

16          (E) The court may authorize disclosure--at a time, in a manner,
17       and subject to any other conditions that it directs--of a grand-jury
         matter:
18          (i) preliminarily to or in connection with a judicial proceeding;
            (ii) at the request of a defendant who shows that a ground may
19       exist to dismiss the indictment because of a matter that occurred
         before the grand jury; . . .

20   The Supreme Court set forth the standard for disclosure of grand jury
21   transcripts in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222-23

22   _____

23   [1]On January 7, 2009, the Court granted the Government's Application for an
24   Order Allowing Disclosure of Grand Jury Testimony (Ct. Rec. 39).  The
25   Government sought permission to provide to Defendant's counsel a copy of the
26   grand jury testimony any witness the Government intended to call at the
27   suppression hearing and at trial.

28   **ORDER GRANTING, IN PART, AND DENYING, IN PART,
     DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
     OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
     MINUTES; CONTINUING TRIAL ~ 15**

1   (1979):

2              Parties seeking grand jury transcripts under Rule 6(e) must
         show that the material they seek is needed to avoid a possible injustice
3        in another judicial proceeding, that the need for disclosure is greater
         than the need for continued secrecy, and that their request is structured
4        to cover only material so needed .... For in considering the effects of
         disclosure on grand jury proceedings, the courts must consider not
5        only the immediate effects upon a particular grand jury, but also the
         possible effect upon the functioning of future grand juries. ...
6        [D]isclosure is appropriate only in those cases where the need for it
         outweighs the public interest in secrecy and that the burden of
7        demonstrating this balance rests upon the private party seeking
         disclosure.

8   *See also United States v. Nix*, 21 F.3d 347, 351 (1994) ("The secrecy of grand jury

9   proceedings 'is an integral part of our criminal justice system.'").

10      Parties seeking disclosure under Rule 6(E)(i) "must show that the material

11  they seek is needed to avoid a possible injustice in another judicial proceeding, that

12  the need for disclosure is greater than the need for continued secrecy, and that their

13  request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at

14  222.

15      A defendant seeking grand jury materials under Rule 6 must "demonstrate

16  with particularity the existence of a compelling need" for disclosure. *United States

17  v. DeTar*, 832 F.2d 1110, 1113 (9th Cir. 1987). Unsubstantiated, speculative

18  assertions of improprieties in the proceedings do not supply the particular need

19  require to outweigh the policy of grand jury secrecy. *United States v. Ferreboeuf*,

20  632 F.2d 832, 835 (9th Cir. 1980). The discharge of the grand jury decreases the

21  need for continued secrecy. *United States v. Fischbach and Moore, Inc.*, 776 F.2d

22  839, 844 (9th Cir. 1985). However, Defendant must still how a particularized need

23  for the transcripts. *Id.* Moreover, disclosure of grand jury transcripts should be

24  limited to those portions of the transcripts for which a compelling need for

25  disclosure outweighs the need for continued secrecy. *Id.* at 845.

26      The Court finds that Defendant's request is overbroad and is based on

27  unsubstantiated allegations and speculation. Defendant has not met his burden of

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,
    DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
    OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
    MINUTES; CONTINUING TRIAL ~ 16**

1   showing a particularized need for the transcripts.

2   **3.    Conclusion**

3       The Court concludes that the manner in which the search warrant was

4   executed resulted in a police-dominated atmosphere.  As such, Defendant should

5   have received the *Miranda* warnings prior to being questioned by the FBI agents.

6   Consequently, any statements made by Defendant must be suppressed.  On the

7   other hand, the Court concludes that the search warrant was supported by probable

8   cause and was executed in a reasonable manner.  The evidence seized during the

9   execution of the search warrant will not be suppressed.  The Court declines to

10  order the return of the seized property.  Finally, the Court concludes that Defendant

11  has not met his burden under Fed. R. Cr. P. 6(E) to permit this Court to grant his

12  request to release the transcripts of the Grand Jury.

13      Accordingly, **IT IS HEREBY ORDERED:**

14      1.    Defendant's Motion to Suppress Evidence and for Return of Property

15  (Ct. Rec. 27) is **GRANTED, in part,** and **DENIED, in part**.

16      2.    Defendant's Motion for Inspection of Grand Jury Minutes (Ct. Rec. 28)

17  is **DENIED**.

18      3.    The current jury trial date of January 20, 2009, is **stricken**.  The jury

19  trial is **reset** for **March 16, 2009,** in Los Angeles, California, at 9:00 a.m.  Counsel

20  shall appear in chambers at 8:30 a.m. on the first day of trial.

21      4.    Pursuant to 18 U.S.C. § 3161(h)(8)(A), the time between November

22  21, 2008, the date Defendant's Motion to Suppress was filed, until March 16,

23  2009, the new trial date, is **DECLARED  EXCLUDABLE** for purposes of

24  computing time under the Speedy Trial Act.  The Court finds that the ends of

25  justice served by such a continuance outweigh the interests of the public and

26  Defendant in a speedy trial.

27      **IT IS SO ORDERED.**  The District Court Executive is directed to enter this

28  **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 17**

1   order and to provide copies to counsel.

2       **DATED** the 23rd day of January, 2008.

3

4

5                     _S/Robert H. Whaley_

6                   ROBERT H. WHALEY
                United States District Judge

7

8

9   C:\Temp\notesFFF692\deny.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   **ORDER GRANTING, IN PART, AND DENYING, IN PART,
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND FOR RETURN
OF PROPERTY; DENYING MOTION TO INSPECT GRAND JURY
MINUTES; CONTINUING TRIAL ~ 18**