1 THOMAS P. O'BRIEN
United States Attorney
2 CHRISTINE C. EWELL
Assistant United States Attorney
3 Chief, Criminal Division
WENDY T. WU (Cal. Bar No. 242075)
4 Assistant United States Attorney
     1400 United States Courthouse
5    312 North Spring Street
     Los Angeles, California 90012
6    Telephone: (213) 894-0619
     Facsimile: (213) 894-0142
7    E-Mail:   Wendy.Wu@usdoj.gov

8 Attorneys for Plaintiff
UNITED STATES OF AMERICA

9

                      UNITED STATES DISTRICT COURT
10
                FOR THE CENTRAL DISTRICT OF CALIFORNIA
11

UNITED STATES OF AMERICA,      )      CR No. 08-686-RHW
12                             )
            Plaintiff,         )      GOVERNMENT'S TRIAL MEMORANDUM
13                             )
               v.              )
14                             )      Trial Date: May 12, 2009
ADONIS GLADNEY,                )
15                             )
            Defendant.         )
16                             )
                               )
17 _____ )

18      Plaintiff, United States of America, by and through its

19 counsel of record, the United States Attorney's Office for the

20 Central District of California, hereby submits its trial

21 memorandum for the above-captioned case.

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28

1                    **MEMORANDUM OF POINTS AND AUTHORITIES**

2                         **I.   CASE SCHEDULING MATTERS**

3       A.   Trial in this matter is set for May 12, 2009, at

4   9:00 a.m.

5       B.   The estimated time for the government's case-in-chief

6   is two to three days.

7       C.   The government anticipates 11 witnesses in its case-in-

8   chief.  The government filed its witness list on May 6, 2009.  A

9   copy is attached hereto as Exhibit 1.

10      D.   The government has filed two motions in limine: (1) to

11  admit portions of the Rule 15 deposition testimony of witness

12  Deana Browne and to respond to objections made during the

13  deposition; and (2) to exclude improper arguments by defendant

14  and his counsel at trial.  The government will file two

15  additional motions in limine: (1) to admit evidence of

16  defendant's prior sales of volume licenses pursuant to Federal

17  Rule of Evidence ("FRE") 404(b); and (2) to preclude the defense

18  under the first sale doctrine.

19      E.   Defendant is released on bond pending trial.

20      F.   The government filed the its proposed jury instruction

21  on May 6, 2009.

22                         **II.   SUMMARY OF FACTS**

23    This investigation stemmed from defendant's purchase of

24  counterfeit software products from individuals and entities who

25  are known and/or admitted counterfeit merchants.  The charges in

26  the indictment relate to defendant's unauthorized sale of

27  Microsoft copyrighted software and licenses on the Internet.

28      Beginning in 2002, and continuing to on or about April 19,

1  2006, defendant, through a business he owned that was known as AG

2  Solutions PC or Above Ground Solutions, sold Microsoft software

3  and licenses that he falsely represented were authorized for sale

4  and installation on multiple computers.  Defendant did not, in

5  fact, have authorization or a license to sell any Microsoft

6  software or licenses.

7      On or about May 9, 2005, and again on or about April 7,

8  2006, an information technology specialist in the United States

9  Marine Corps, located at Camp LeJeune, North Carolina, purchased

10  Microsoft product from defendant on behalf of the Marine Corps.

11  In the first sale, defendant sold one Microsoft Office 2003

12  Professional Compact Disk set that he falsely represented

13  included an authorized 500-user volume license and an authorized

14  volume license product activation key (GWH28-DGCMP-P6RC4-6J4MT-

15  3HFDY).  The product key code was a technology that Microsoft

16  employed to control and protect its copyrighted work and was

17  unique to a specific customer.  The product key code that

18  defendant attached to the 2005 product sold to the Marine Corps

19  was did not legitimately belong to defendant.  Defendant,

20  instead, fraudulently obtained and provided the product key code

21  to the Marine Corps.  In doing so, defendant wilfully

22  circumvented the technology that Microsoft used to control and

23  protect its copyrighted product.

24      In the second sale, defendant sold one Microsoft Office 2003

25  Professional CD set that he falsely represented included an

26  authorized 250-user volume license and one authorized volume

27  license product activation key (DBQ8B-CBTMR-29YWC-7YPGT-QTH3Y).

28  As above, the product key code that defendant attached to the

1  product sold to the Marine Corps did not legitimately belong to

2  defendant.  Defendant, instead, fraudulently obtained or created

3  the product key code using a key-code generating computer

4  program.  Again, defendant did so with the purpose of wilfully

5  circumventing the technology that Microsoft used to control and

6  protect its copyrighted product.

7     In both transactions, defendant sent the software product to

8  the Marine Corps via Federal Express.  The Marine Corps paid

9  defendant $18,000 for the first purchase and $9,000 for the

10 second purchase.  The software that defendant sold was

11 copyrighted by Microsoft, and the retail cost for 750 authorized

12 user licenses of that software was approximately $400,000.

13    On or about March 26, 2006, an undercover agent with the

14 Federal Bureau of Investigation ordered a set of Microsoft SQL

15 Server 2000 Standard Edition software, including 25 Client Access

16 Licenses ("CAL"), via defendant's business website,

17 www.abovegroundsolutions.com.  Defendant falsely represented the

18 software was a "Full Retail Version," and further misrepresented

19 on his website that he sold "fully authentic and legitimate

20 products."  The agent subsequently received a set of software

21 disks that was not authorized for retail distribution.

22    On April 19, 2006, federal agents executed a search warrant

23 at defendant's premises, and seized, among other things,

24 defendant's computer equipment.  Forensic analysis revealed that

25 defendant possessed several unauthorized activation key codes for

26 Microsoft software products, along with a computer program that

27 generated fraudulent key codes.

28 ///

1           **III.   INDICTMENT AND ELEMENTS OF EACH CHARGE**

2       The five-count indictment charges defendant with violating

3   18 U.S.C. § 1341 (mail fraud) and 17 U.S.C. § 1201(a)(1)(A) (the

4   anti-circumvention provision of the Digital Millenium Copyright

5   Act or the "DMCA"), and seeks criminal forfeiture of the property

6   seized from defendant.  A copy is attached as Exhibit 2.

7       **A.    Counts One, Two, and Three: 18 U.S.C. § 1341**

8       In order for defendant to be found guilty of mail fraud in

9   violation of 18 U.S.C. § 1341, the government must prove the

10  following:

11      One, defendant knowingly devised or participated in a scheme

12  to defraud as described in the indictment;

13      Two, defendant did so with the intent to defraud;

14      Three, the scheme or artifice to defraud was as to a

15  material matter;  and

16      Four, the defendant used, or caused to be used, the mails or

17  a private interstate carrier to carry out or attempt to carry out

18  an essential part of the scheme.

19  18 U.S.C. § 1341; 2A O'Malley, Grenig and Lee <u>Federal Jury</u>

20  <u>Practice and Instructions</u>, § 47.03 (6th ed.); <u>Ninth Circuit Model</u>

21  <u>Criminal Jury Instructions</u>, No. 8.101 (2009 ed.) (modified).

22      **B.    Count Four: 17 U.S.C. § 1201(a)(1)(A)**

23      In order for defendant to be found guilty of violating the

24  Digital Millenium Copyright Act, 17 U.S.C. § 1201(a)(1)(A), the

25  government must prove the following:  That the defendant

26  (1) willfully (2) circumvented (3) a technological measure that

27  effectively controls access; (4) to a copyrighted work; and (5)

28  he did so for commercial advantage or private financial gain.

                                    5

1  17 U.S.C. §§ 1201(a)(1)(A), 1204(a).

2      **C.    Count Five: Criminal Forfeiture**

3      In count 5 of the Indictment, the government notified

4  defendant pursuant to Rules 7(c)(2) and 32.2(a) of the Federal

5  Rules of Criminal Procedure that it seeks forfeiture of property

6  pursuant to 28 U.S.C. § 2461(c), 18 U.S.C. § 981(a)(1)(C) and 21

7  U.S.C. § 853(a).  Because criminal trials involving forfeiture

8  have been rare in this district in recent years, the government

9  has filed a memorandum discussing the procedures it believes

10 should be followed with respect to the criminal forfeiture

11 elements of the case.

12     As set forth in the government's memorandum, pursuant to

13 Rule 32.2(b), the Court must conduct a proceeding to determine

14 the forfeitability of the property "as soon as practicable" after

15 a verdict or finding of guilty.  Fed. R. Crim. P. 32.2(b)(1).

16 During the forfeiture phase of the trial,

17         if the government seeks forfeiture of specific
           property, the court must determine whether the
18         government has established the requisite nexus between
           the property and the offense.  If the government seeks
19         a personal money judgment, the court must determine the
           amount of money that the defendant will be ordered to
20         pay.

21
   Id.
22
       In this case, the government seeks the forfeiture of two
23
   special construction Lamborghinis and $74,038 (the "specific
24
   forfeiture assets") seized from defendant on the ground that the
25
   requisite nexus exists between these assets and the mail fraud
26
   scheme charged in Counts One through Three:  the specific
27
   forfeiture assets constitute or are derived from proceeds of the
28

                                  6

1 mail fraud scheme.

2     The government also seeks a money judgment of forfeiture in

3 an amount equal to the total amount of proceeds of the mail fraud

4 scheme.  It is "clear that the federal rules explicitly

5 contemplate the entry of money judgment in criminal forfeiture

6 cases." United States v. Polo Padron, 527 F.3d 1156, 1162 (11th

7 Cir. 2008)(affirming grant of a money judgment pursuant to a

8 section 2461(c) criminal forfeiture count).  The Ninth Circuit

9 and other circuits have upheld granting of money judgments in

10 criminal actions.  See United States v. Casey, 444 F.3d. 1071,

11 1074-1076 (9th Cir. 2006)(the government is entitled to a money

12 judgment even against a defendant who has no assets with which to

13 satisfy the judgment); United States v. Hall, 434 F.3d 42, 59-60

14 (1st Cir. 2006)("A money judgment permits the government to

15 collect on the forfeiture order in the same way that a successful

16 plaintiff collects a money judgment from a civil defendant," and

17 prevents a defendant from avoiding the forfeiture sanction by

18 ridding himself of ill-gotten gains; drug trafficking case);

19 United States v. Vampire Nation, 451 F.3d 189, 202-203 (3d Cir.

20 2006) (mail fraud case under 28 U.S.C. §2461(c) via 18 U.S.C. §

21 981(a)(1)(C)); United States v. Candelaria-Silva, 166 F.3d 19, 42

22 (1st Cir. 1999) (a criminal forfeiture order may take one of

23 three forms, including personal judgment); and In re Billman, 915

24 F.2d 916, 920 (4th Cir. 1990) ("a forfeiture money judgment can

25 be satisfied out of any of the defendant's assets").

26 ///

27 ///

28 ///

7

1                    **IV.   LEGAL AND EVIDENTIARY ISSUES**

2        **A.    Defendant's Statements**

3        The government may properly elicit testimony from witnesses

4 regarding statements previously made by defendant.  Such

5 statements are not hearsay because they are offered against a

6 defendant and they are defendant's own statements.  Fed. R. Evid.

7 801(d)(2)(A); United States v. Burreson, 643 F.2d 1344, 1349 (9th

8 Cir. 1981).  The government's reference to defendant's

9 statements, however, does not allow defendant to offer his own

10 out-of-court statements.  When offered by the defendant, such

11 statements are hearsay.  Fed. R. Evid. 801(d)(2); United States

12 v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (district court

13 properly granted the government's motion in limine to exclude

14 defendant's post arrest statements through cross examination of

15 INS agent); United States v. Collicott, 92 F.3d 973, 983 (9th

16 Cir. 1996)(hearsay not admitted regardless of Rule 106).

17        Defendant is not precluded from introducing evidence

18 necessary to put on his defense, but he must to so by testifying.

19 Defendant simply is not permitted to place any of his prior

20 statements before the Court or jury without subjecting himself to

21 cross-examination.  Fed. R. Evid. 801(c); Ortega, 203 F.3d at

22 682; United States v. Fernandez, 839 F.2d 639, 640 (9th Cir.

23 1988); United States v. Cunningham, 194 F.3d 1186, 1199 (11th

24 Cir. 1999); United States v. Willis, 759 F.2d 1486, 1501 (11th

25 Cir. 1985).  Thus, defendant may not introduce his prior

26 statements through defense witnesses (other than defendant

27 himself), or by cross-examining government witnesses with

28 defendant's hearsay statements.

8

1        **B.    Recorded Conversations**

2        The government intends to introduce recordings of telephone

3   calls between defendant and a confidential source working for the

4   FBI.   The government expects that the FBI confidential source

5   will provide the foundation for the disk containing the

6   recordings.

7        The foundation that must be laid for the introduction into

8   evidence of recorded conversations is a matter largely within the

9   discretion of the trial court.   There is no rigid set of

10   foundational requirements.   Rather, the Ninth Circuit has held

11   that recordings:

12          [A]re sufficiently authenticated under Federal Rule of
            Evidence 901(a) if 'sufficient proof has been
13          introduced so that a reasonable juror could find in
            favor of authenticity or identification. [Citing
14          cases.]   This is done by proving a connection between
            the evidence and the party against whom the evidence is
15          admitted, and can be done by both direct and
            circumstantial evidence.

16

17   United States v. Matta-Ballesteros, 71 F.3d 754, 768 (9th Cir.

18   1995), modified, 98 F.3d 1100 (9th Cir. 1996) (allowing into

19   evidence recordings of the torture of DEA Special Agent Camarena

20   which were in the possession of a co-defendant).   A person who

21   monitored or participated in the conversation is entitled to

22   testify as to the contents of the conversation, not withstanding

23   the fact that the conversation was recorded.   United States v.

24   Gonzales-Benitez, 537 F.2d 1051, 1053-54 (9th Cir. 1976).

25        Recorded conversations are competent evidence even when they

26   are partly inaudible, unless the unintelligible portions are so

27   substantial as to render the recording as a whole untrustworthy.

28   United States v. Rrapi, 175 F.3d 742 (9th Cir. 1999) (court

1  listens to recordings and admits portion of one recording and

2  denies admissibility of two others in Albanian language that were

3  very poor quality); United States v. Carlson, 423 F.2d 431, 440

4  (9th Cir. 1970).

5      All duly admitted recorded conversations must be played in

6  open court.  Allowing jurors to take into the jury deliberation

7  room recorded conversations that were not played in open court is

8  structural error requiring automatic reversal if a defendant

9  objects to allowing the jurors to have the unplayed calls in the

10  jury room.  United States v. Noushfar, 78 F.3d 1442, 1445-46 (9th

11  Cir. 1996).

12      **C.   Proof of Copyright**

13      The government intends to prove the existence of a valid

14  copyright for Microsoft's Office 2003 Professional software by

15  introducing a certificate of registration.  A certificate of

16  registration "made before or within five years after first

17  publication of the work shall constitute prima facie evidence of

18  the validity of the copyright."  17 U.S.C. § 410(c).  Once the

19  certificate of registration is introduced by the government and

20  accepted as authentic by the Court, the burden shifts to the

21  defendant to prove that the copyright is not valid or that the

22  registration was obtained fraudulently. See, e.g., Ets-Hokin v.

23  Skyy Spirits, Inc., 225 F.3d 1068, 1075-76 (9th Cir. 2000)

24  (quoting Entertainment Research Group, Inc. v. Genesis Creative

25  Group, Inc., 122 F.3d 1211, 1217 (9th Cir.1997)); United States

26  v. Taxe, 540 F.2d 961, 966 (9th Cir. 1976); United States v.

27  Moore, 604 F.2d 1228, 1234 (9th Cir. 1979).

28  ///

1      **D.    Marine Corps' Business Records**

2      The government intends to introduce the Marine Corps'

3 business records, including purchase requests and purchase

4 orders, in connection with its purchase of Microsoft Office 2003

5 Professional software from defendant.  These records of regularly

6 conducted activity are not hearsay, and are admissible.  Fed R.

7 Evid. 803(6).  This evidence is also self-authenticating pursuant

8 to FRE 902(11).

9      In order to introduce a document as a business record under

10 FRE 803(6), a party must show through a custodian of records or

11 other qualified witness that the document was (a) made or

12 transmitted by a person with knowledge at or near the time of the

13 event recorded, and (b) kept in the course of a regularly

14 conducted business activity.  <u>United States v. Ray</u>, 930 F.2d

15 1368, 1370 (9th Cir. 1990).

16      Under FRE Rule 902(11), domestic business records may be

17 introduced as self-authenticating documents if accompanied by a

18 written declaration of its custodian or other qualified person,

19 certifying that the record (1) "was made at or near the time of

20 the occurrence of the matters set forth by, or from information

21 transmitted by, a person with knowledge of those matters;" (2)

22 "was kept in the course of the regularly conducted activity;" and

23 (3) "was made by the regularly conducted activity as a regular

24 practice."  The government need only provide written notice of

25 the intention to so introduce evidence to defense counsel, and

26 make the document and declaration available to them.  In this

27 case, the government has provided notice of these documents, as

28 well as its intent to introduce them via FRE 902(11).

1    The government intends to mark each business record as an

2 exhibit (e.g., Exhibit 1), and mark the declaration of the

3 custodian of record as a subset exhibit (e.g., Exhibit 1a).  The

4 government will then offer into evidence only the business

5 record, not the document which makes it admissible.  This

6 procedure complies with <u>Crawford v. Washington</u>, 124 S. Ct. 1354

7 (2004), regarding the use of testimonial hearsay.  Because the

8 declarations are submitted to the court for the purpose of

9 facilitating a threshold judicial determination of admissibility

10 and not used to prove facts to the jury, the rules of evidence,

11 including the rules of hearsay, do not apply.  Fed R. Evid.

12 104(a).

13       **E.    Authentication, Identification and Chain of Custody.**

14    The government intends to introduce items of physical

15 evidence seized in this case.  The test of admissibility of

16 physical objects connected with the commission of a crime

17 requires a showing that the object is in substantially the same

18 condition as when the crime was committed (or the object seized).

19 <u>See</u> Fed. R. Evid. 901(a) ("[t]he requirement of authentication or

20 identification as a condition precedent to admissibility is

21 satisfied by evidence sufficient to support a finding that the

22 matter in question is what its proponent claims").

23    Rule 901(a) only requires the government to make a prima

24 facie showing of authenticity or identification "so that a

25 reasonable juror could find in favor of authenticity or

26 identification."  <u>United States v. Chu Kong Yin</u>, 935 F.2d 990,

27 996 (9th Cir. 1991).  Factors to be considered in the court's

28 determination include the nature of the article, the

1 circumstances surrounding the preservation and custody of it, and

2 the likelihood of intermediaries tampering with it.  United

3 States v. Kaiser, 660 F.2d 724, 733 (9th Cir. 1981); Gallegos v.

4 United States, 276 F.2d 914, 917 (9th Cir. 1960).  The government

5 is not required, in establishing chain of custody, to call all

6 persons who have come into contact with the piece of evidence.

7 Reyes v. United States, 383 F.2d 734 (9th Cir. 1967); Gallegos,

8 276 F.2d at 917.  Alleged gaps in a chain of custody go to the

9 weight of the evidence, rather than its admissibility.  See

10 United States v. Matta-Ballesteros, 71 F.3d 754, 768-69 (9th Cir.

11 1995).  To avoid defects in the chain of custody, there must be a

12 showing that the evidence is in substantially the same condition

13 as when it was seized.  Id.

14      When exhibits are at all times in official custody, a

15 presumption of regularity attends the discharge of official

16 duties.  United States v. Aviles, 623 F.2d 1192, 1198 (9th Cir.

17 1980).

18      **F.   Jury Nullification and Improper Defenses**

19      Defendant may seek to present the following arguments, among

20 others, at trial in the effort to encourage jury nullification or

21 to present improper or invalid defenses:

22      (1)  the government's prosecution and investigation of the

23           case against defendant was racially motivated;

24      (2)  the prosecution or investigation of the case against

25           defendant, including the execution of the search

26           warrant at defendant's premises, was the product of a

27           government conspiracy with Microsoft to destroy

28           defendant's business;

1    (3)    the search warrant was not support by probable cause;

2    (4)    defendant is entitled to the return of the seized

3            property and has suffered economic hardship;

4    (5)    the government misrepresented witness Deana Browne's

5            medical condition and unavailability to testify at

6            trial;

7    (6)    the U.S. Marine Corps saved money, and consequently

8            passed the savings onto taxpayers, by purchasing

9            unauthorized Microsoft software from defendant;

10   (7)    Microsoft previously received payment from others for

11           the product sold by defendant.

12   The government has filed a motion in limine to preclude

13   defendant and his counsel from presenting evidence, questions, or

14   argument relating to jury nullification and other improper

15   defenses.  As discussed in the government's motion, a defendant

16   is not entitled to present evidence or argument solely to promote

17   jury nullification.  "[N]either a defendant nor his attorney has

18   a right to present to a jury evidence that is irrelevant to a

19   legal defense to, or an element of, the crime charged.  Verdicts

20   must be based on the law and the evidence, not on jury

21   nullification as urged by either litigant."  Zal v. Steppe, 968

22   F.2d 924, 930 (9th Cir. 1992) (Trott J., concurring).

23   **G.    First Sale Doctrine is Not a Defense**

24   The defendant may also seek to present the first sale

25   doctrine as a defense to the charged offenses.  The government

26   will file a motion in limine to address why the first sale

27   doctrine does not apply in this case.

28   In summary, the first sale doctrine, codified at 17 U.S.C. §

109, provides that the owner of a particular copy of a lawfully-made copyrighted work (or any person authorized by such owner), is entitled, without authorization from the copyright owner, to sell or otherwise dispose of the possession of that copy of the copyrighted work.  Accordingly, when properly asserted, this doctrine can serve as a defense only to copyright infringement. The doctrine, however, does <u>not</u> apply to unlawful distribution of copyrighted work, and is <u>not</u> a defense to the crimes of mail fraud and violation of the anti-circumvention provision of the DMCA as a matter of law.

### V.   CONCLUSION

The government respectfully requests leave to file such supplemental memoranda as may become necessary during trial.


DATED: May 6, 2009                    Respectfully submitted,

                                      THOMAS P. O'BRIEN
                                      United States Attorney

                                      CHRISTINE C. EWELL
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                       /s/
                                      WENDY T. WU
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

15